# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Veronica Till Goodson
Direct: +1 202.887.3719
Fax: +1 202.831.6007
VTillGoodson@gibsondunn.com

September 16, 2019

VIA ECF

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, New York 10007

Re:   <u>Lambda Legal Defense and Education Fund, Inc. v. United States Department of Health and Human Services</u>, No. 19-cv-04707 (PKC)

Dear Judge Castel:

I write on behalf of both parties in the above-referenced matter, pursuant to the Court's Order dated May 28, 2019 (Dkt. No. 7), and in advance of the initial pretrial conference scheduled for September 23, 2019, at 11:15 AM.  This letter provides: (1) a brief description of the case, including the factual and legal bases for the claims and defenses; (2) any contemplated motions; and (3) the prospect for settlement.  Additionally, the parties request that the Court provide relief from the requirement to submit a civil case management plan in light of the nature of the case, and set forth a proposed document processing schedule agreed upon between the parties.

   **1.**   **Brief Description of the Case**

   a.   <u>Plaintiff's Position</u>

This lawsuit seeks to enforce three requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, that Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal") submitted to the Department of Health and Human Services ("HHS" or "Defendant") on April 27, 2018.  Lambda Legal's requests seek information about HHS's activities regarding lesbian, gay, bisexual, transgender, and queer matters or people, and specifically pertain to HHS's policies and decisions ("the Nondiscrimination Policies/935 Request"), the activities of politically appointed officials at HHS ("the HHS Officials/937 Request"), and coordination between HHS and outside organizations ("the Outside Organizations/936 Request").  Prior to filing this lawsuit, Lambda Legal attempted to communicate with Defendant regarding the status of the requests on at least two occasions.  Nevertheless, Defendant failed to provide a determination—or, indeed, provide any status information—regarding two of the three requests (the HHS Officials/937 Request and Outside Organizations/936 Request) for the approximately thirteen-month period between submission of the requests and commencement of this action.  In the sole determination, provided on September 14, 2018, Defendant addressed only one element of the four-part Nondiscrimination

Policies/935 Request, and stated that no responsive records were found. But just less than one month later, in federal court in a different matter, Defendant stated that it was actively undertaking decisions regarding the enforcement of nondiscrimination regulations covering Medicare and Medicaid, the subject-matter of Lambda Legal's requests to which no responsive documents supposedly existed.[1] As a result of Defendant's failure to provide determinations for all of the requests, and failure to conduct adequate searches as to the request where Defendant stated that no records were found, Lambda Legal commenced this action on May 22, 2019.

Since the commencement of this action, the parties have conferred regarding the scope of the requests and the timeline for Defendants' response. In particular, Lambda Legal sought an initial response to its requests before the end of a notice-and-comment rulemaking period related to regulations affecting nondiscrimination in healthcare. Lambda Legal requested on three occasions that Defendant release responsive material on this timeline, including proposing a specific deadline of July 31, 2019, and, subsequently, August 7, 2019. Defendant did not agree to release documents on this timeline. Ultimately, Defendant released responsive materials on September 10, 2019, when Defendant fully or partially released a total of 290 pages in response to Outside Organizations/936 Request.

The parties have reached agreement on the prioritization of the requests. With regards to a production schedule, Lambda Legal initially proposed interim monthly productions of at least 1,000 pages per month. Defendant has agreed to process (though not necessarily produce) at least 500 pages per month. Further, Defendant has completed initial searches and located potentially responsive material for the requests as follows:

- Outside Organizations/936 Request: Approximately 3,275 pages of potentially responsive material.

- HHS Officials/937 Request: Approximately 83,000 pages of potentially responsive material.

---

[1] Although it is possible that records related to the conduct disclosed in Defendant's federal court filing may be subject to the FOIA exemption permitting agencies to withhold materials reflecting deliberative or pre-decisional materials, the potential availability of an exemption does not relieve Defendant of the obligation to conduct an adequate search for documents. Further, if and when potentially exempt documents are located, Defendant must provide Lambda Legal with documentation describing the materials and the justification for nondisclosure. *See Halpern v. F.B.I.*, 181 F.3d 279, 291 (2d Cir. 1999).

**GIBSON DUNN**

September 16, 2019
Page 3

- Nondiscrimination Policies/935 Request: The universe of potentially responsive documents is unknown at this time, because the parties have agreed to defer discussions on narrowing the parameters of this request to focus on processing the other two requests.

Although Lambda Legal is encouraged by these initial steps and hopeful that the parties will be able to reach a mutually agreeable timetable for the balance of Defendant's document production, Lambda Legal is concerned that a pace of 500 pages processed per month will not result in Defendant completing its response in an acceptable timeframe. Defendant has communicated that a processing schedule of 500 documents per month is near the limit of Defendant's capabilities for responding to Lambda Legal's requests. Against that backdrop, and with the goal of beginning to receive responsive materials as soon as possible, Lambda Legal accepted this schedule while the parties continued to refine the prioritization and scope of the requests. Lambda Legal reserves all rights to seek further intervention from this Court if necessary.

   b. <u>Defendant's Position</u>

On their face, Plaintiff's requests are extremely broad, involve dozens, if not hundreds of custodians, and review and processing of the requests would pose an undue burden on the Government. That said, the parties have negotiated in good faith to narrow and refine the requests to a more reasonable scope, and the parties continue to discuss further means of reducing the review and processing burden while targeting the materials that Plaintiff desires. Although the parties have reached agreement as to the current production schedule, the Government provides some additional background with respect to the history of the parties' negotiations to put the current agreement in context.

First, with respect to Plaintiff's post-complaint requests for production, the July and August deadlines were unilaterally proposed by Plaintiff. The Government could not agree to any deadlines at that time because it was still conducting searches and analyses relevant to determining the scope of Plaintiff's requests, including but not limited to determining potentially responsive custodians in consultation with Plaintiff and processing collected documents to determine anticipated review and processing volumes. In addition, the Government proposed certain review parameters to Plaintiff in early August but did not receive a response from Plaintiff until more than three weeks later.

Second, the Government's production of documents on September 10, 2019, reflects a review of more than 600 pages of material (more than the 500 pages agreed to by the parties); the balance of the reviewed documents were either non-responsive (over 300 pages) or subject to further review by other agencies (23 pages). Moreover, the Government

September 16, 2019
Page 4

continues to process potentially responsive records, again as agreed to by the parties, and the parties anticipate subsequent discussions to further refine the search parameters. For example, the Government has identified a category of communications that appears voluminous but non-responsive, and the Government has proposed excluding such records to expedite processing. Plaintiffs have determined, at present, to have the Government continue to process those records at this time, and the parties will revisit the proposal as processing continues.

Third, with respect to Plaintiff's "concerns" about the processing time required to respond to Plaintiff's requests, the Government notes that (a) the review rate has been agreed upon by the parties, and (b) the processing time required is inversely proportional to the scope of the requests. In fact, one basis for the parties' agreement to defer processing the 935 Request is because the volume is anticipated to be significantly greater than that of the other two requests because of the facial breadth of the 935 Request.

Despite these unresolved differences, the Government is committed to processing at least 500 pages per month as agreed by the parties, as well as continuing dialogue with Plaintiff to determine if additional narrowing is possible. While the Government understands that Plaintiff reserves the right to seek further intervention from the Court concerning the processing rate, the Government also reserves the right to seek Court intervention if future circumstances require an adjustment to account for available resources and the need to avoid unduly prejudicing other pending FOIA requests, many of which are also currently in litigation.

## 2. Contemplated Motions

There are no currently outstanding motions. The parties anticipate that if efforts to reach a negotiated resolution are unsuccessful, one or both of the parties will file summary judgment motions.

## 3. Prospect for Settlement

Since this case was filed on May 22, 2019, the parties have conferred more than five times and exchanged correspondence regarding Defendant's search efforts and a schedule for Defendant's response to Plaintiff's FOIA requests, and have reached agreement on several points, as discussed below. Both parties are prepared to continue engaging in settlement negotiations as the case progresses.

GIBSON DUNN

September 16, 2019
Page 5

      **4.**      **Case Management Plan and Proposed Document Processing Schedule**

Because this is an action brought pursuant to FOIA, Local Civil Rule 16.1 exempts this action from the mandatory scheduling order requirement contained in Fed. R. Civ. P. 16(b). Accordingly, the parties respectfully request relief from the obligation under the May 28, 2019 Order to submit a joint Case Management Plan in writing at the conference. Moreover, the parties anticipate that the case management structure outlined in the Court's template Civil Case Management Plan will not be necessary in this case, because we expect that this matter, like most FOIA matters, will be resolved on cross-motions for summary judgment without the need for discovery.[2] See, *e.g.*, *Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir. 2005).

However, since the initiation of this case on May 22, 2019, the parties have conferred regarding a plan for Defendant's review and release of responsive records, and reached an agreement on several terms. Consequently, the parties present the following schedule for the Court's review:

- HHS will process at least 500 pages per month and provide interim monthly releases of responsive documents;

- HHS will prioritize the requests in the following order: (1) the Outside Organizations/936 Request, (2) the HHS Officials/937 Request, and (3) the Nondiscrimination Policies/935 Request;

Based upon this production schedule, or a different production schedule entered by the Court, the parties propose to provide a joint status update to the Court every 90 days with the first to occur no later than December 22, 2019, unless issues arise or the Court would prefer a different schedule.

We thank the Court for its consideration of this matter.

---

[2] One issue that the Court's Civil Case Management Plan addresses that does not relate to a discovery schedule is whether all parties consent to conducting all further proceedings before a Magistrate Judge. At this time, the parties do not consent to conducting all further proceedings before a Magistrate Judge.

GIBSON DUNN

September 16, 2019
Page 6

                                   Respectfully submitted,

                                   /s/ Veronica Till Goodson
                                  Veronica Till Goodson (*admitted pro hac vice*)
                                  Joshua M. Wesneski

                                  GIBSON, DUNN & CRUTCHER LLP
                                  1050 Connecticut Avenue, N.W.
                                  Washington, D.C.  20036
                                  Telephone:  202.955.8500


                                  Omar Gonzalez-Pagan
                                  Cathren Cohen

                                  LAMBDA LEGAL DEFENSE AND
                                        EDUCATION FUND, INC.
                                  120 Wall Street, 19th Floor
                                  New York, NY  10005
                                  Telephone:   212.809.8585


                                  *Attorneys for Plaintiff Lambda Legal Defense and Education Fund, Inc.*

cc:     All counsel of record (via ECF)